# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| THE HANOVER INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>ENGINEERED SYSTEMS ALLIANCE, LLC,<br>and<br>HONEYWELL INTERNATIONAL, INC.,<br><br>    Defendants. | Civil Action No. TDC-15-0112 |

## MEMORANDUM OPINION

Plaintiff The Hanover Insurance Company ("Hanover") brings this action against Defendants Engineered Systems Alliance, LLC ("ESA") and Honeywell International, Inc. ("Honeywell"). Hanover seeks a declaratory judgment that it has no indemnity obligation under an insurance policy for certain losses incurred by ESA, the policy's named insured, and Honeywell, an additional insured. Pending before the Court are ESA's Motion to Dismiss and Honeywell's Motion to Strike. The Motions are fully briefed and ripe for disposition. No hearing is necessary to resolve the issues. *See* D. Md. Local Rule 105.6. For the reasons set forth below, both motions are DENIED.

## BACKGROUND

The following facts are presented in the light most favorable to Hanover, the nonmoving party:

I.      **Claims for Coverage**

In December 2010, Honeywell entered into a contract with the United States General Services Administration for a construction project relating to the Co-Generation Power Plant at the United States Food and Drug Administration's Federal Research Center in White Oak, Maryland.  As part of that project, in August 2013, Honeywell purchased a natural gas turbine generator ("G-9") and an Inlet Air Cooling ("IAC-9") unit.  The G-9 provides power and steam to the facility, and the IAC-9 uses water-filled coils to cool the air entering the G-9.  Honeywell subcontracted with ESA for services related to the IAC-9/G-9 system.

Hanover alleges that on or about November 11, 2013, ESA employees prepared the IAC-9 for winter weather by draining the water from its coils and blowing the coils dry.  On May 12, 2014, a different Honeywell subcontractor repressurized the IAC-9 coils with water.  The coils leaked and thus damaged the G-9.  Hanover infers that sometime after ESA's November 11, 2013 winterization procedure, water re-entered the IAC-9's coils and froze, causing the leak the following spring.

ESA had purchased an insurance policy from Hanover on which Honeywell was an additional insured.  Following the May 12, 2014 leak, both ESA and Honeywell submitted claims for coverage to Hanover.  Hanover commenced an investigation, but six months later it still had not completed that investigation or reached a final coverage determination.  Hanover blames ESA and Honeywell for withholding information necessary to resolve their claims.

II.     **Procedural History**

On January 14, 2015, Hanover filed a three-count Complaint seeking a declaratory judgment under 28 U.S.C. § 2201 that it is not liable to ESA or Honeywell under the insurance policy.  Count I of the Complaint asserts that the insurance policy's coverage ended before the

date of loss because one of three events occurred before May 12, 2014: (1) ESA's interest in the property may have ended after installation of the IAC-9 and G-9; (2) the project owner or buyer may have accepted the project after the system was placed in use in August 2013; or (3) ESA's and Honeywell's Builder's Risk coverage may have ceased 30 days after the system was placed in use in August 2013.  Count II presents an alternative theory: "Assuming *arguendo* that coverage under the Policy did not end before the date of loss, coverage is excluded for damage to the IAC-9 coils and G-9 turbine because the loss was caused by or resulted from freezing," a form of damage not covered by the policy.  Compl. ¶¶ 43-46, ECF No. 1.  Count III asserts that Hanover is not liable because "faulty, inadequate or defective workmanship, repair, construction, materials used in repair, or maintenance" caused the damage to the IAC-9/G-9 system.  *Id.* ¶ 48.  Hanover requests a judgment declaring that it is not liable under the policy to ESA or Honeywell, a judgment declaring the parties' rights and obligations with respect to ESA's and Honeywell's claims for coverage, and any additional relief the Court finds appropriate.

On April 15, 2015, Honeywell filed an Answer and Counterclaims.  In addition to denying the claims that Hanover is not liable under the insurance policy, Honeywell alleges that Hanover breached its contractual obligations under the policy by failing to indemnify Honeywell and breached its duty of good faith and fair dealing by failing adequately to investigate Honeywell's claim for coverage.  Honeywell also seeks a declaratory judgment that Hanover has a duty to indemnify Honeywell.  On May 6, 2015, Hanover filed an Answer to Honeywell's counterclaims.

Also on April 15, 2015, ESA filed a Motion to Dismiss, arguing that Hanover's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or, in the alternative, under Rule 12(b)(6) for failure to state a claim.

Hanover filed a Response on May 4, 2015. On May 21, 2015, ESA filed a Reply, in which it argued for the first time that Honeywell's counterclaims should be dismissed along with Hanover's Complaint. On May 29, 2015, Honeywell filed a Motion to Strike, requesting that the Court strike or disregard the portions of Hanover's Reply relating to Honeywell's counterclaims, or allow Honeywell to submit a response. ESA submitted a Response to the Motion to Strike on June 15, 2015, and Honeywell filed a Reply on July 2, 2015.

## DISCUSSION

### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### A. Legal Standards

Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Because questions of subject matter jurisdiction concern the court's power to hear the case, they must be resolved before the court can turn to the sufficiency or merits of a claim. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). It is the plaintiff's burden to show that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has failed to make that showing. When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, then the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

Hanover seeks declaratory relief. The Declaratory Judgment Act states, "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[1] 28 U.S.C. § 2201(a) (2012). A court may exercise jurisdiction over a declaratory judgment action when:

(1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment;

(2) the court possesses an independent basis for jurisdiction over the parties (*e.g.*, federal question or diversity jurisdiction); and

(3) the court does not abuse its discretion in its exercise of jurisdiction.

*Volvo Const. Equip. N. America, Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (internal quotation marks omitted). The second prong is met because the parties are citizens of different states and the amount in controversy is more than $75,000, such that there is diversity jurisdiction under 28 U.S.C. § 1332. Below, the Court addresses the first (constitutional) and third (prudential) prongs of the jurisdictional test.

**B.     Constitutional Inquiry**

A declaratory judgment action must satisfy the case or controversy requirement of Article III of the United States Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007). To do so, it must present a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* at 127; *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937). It must be a "real and substantial" controversy, admitting of "specific relief through a decree of a conclusive character, as distinguished from an opinion

---

[1] Hanover also references Federal Rule of Civil Procedure 57, which provides that the Federal Rules of Civil Procedure govern the procedure for declaratory judgment actions and states that the "existence of another adequate remedy does not preclude a declaratory judgment action that is otherwise appropriate." Fed. R. Civ. P. 57.

advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc.*, 549 U.S. at 127; *Aetna Life Ins. Co.*, 300 U.S. at 241. "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

ESA claims that Hanover's declaratory judgment action does not pass Article III muster because Hanover has yet to complete its investigation into the claims filed by ESA and Honeywell or to make a coverage determination. In support of this view, ESA asserts that the "conditional, speculative, and inconclusive" allegations of Hanover's Complaint reveal that the controversy has yet to ripen. Mot. Dismiss at 4. This argument fails for several reasons.

First, although it may be necessary in some circumstances for an insurance company to reach a coverage determination before bringing a declaratory judgment action against an insured, it is not a universal prerequisite for subject matter jurisdiction. For instance, an actual controversy exists between an insurer and insured when the insurer seeks a declaratory judgment on its contractual duty to defend and indemnify the insured in a tort suit that has yet to be decided. *See Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 & n.3 (4th Cir. 1994).

Second, although Hanover has not formally approved or denied these claims, it has firmly concluded that it has no obligation to indemnify ESA and Honeywell. *See* Compl. ¶ 6 ("For the reasons stated in this Complaint, Hanover asserts that, under the Policy, there is no coverage with respect to the loss."). Hanover has specifically pleaded in Count II, without conditions, that

"[b]ecause the damage to the IAC-9 coils and G-9 turbine were caused by or resulted from freezing water, Hanover has no indemnity obligation to ESA or to Honeywell." *Id.* ¶ 46. Although Hanover uses conditional language in asserting in Counts I and III alternative theories for its position that it need not indemnify ESA and Honeywell, its claims are not based "upon a hypothetical state of facts," because all of the events necessary to determine liability under the policy have already occurred. *Aetna Life Ins. Co.*, 300 U.S. at 241. The fact that Hanover does not yet possess all of the facts necessary to establish its entitlement to relief under these theories does not preclude subject matter jurisdiction. Rather, in a declaratory judgment action, "it is the province of the courts to ascertain and find the facts in order to determine the legal consequences." *Id.* at 242.

In support of its position that Hanover's claims are not ripe and do not present an actual controversy, ESA relies on *Moynihan v. West Coast Life Insurance Co.*, 607 F. Supp. 2d 1336 (S.D. Fla. 2009), and *Forest Glade Homeowners Ass'n v. Allied Mutual Insurance Co.*, No. C07-1762JLR, 2009 WL 927750 (W.D. Wash. Mar. 31, 2009). Neither is persuasive.

In *Moynihan*, about 70 days after filing a claim for coverage under a life insurance policy, before the insurance company had completed its investigation, the insured party sued for a declaratory judgment against his insurer, alleging breach of contract. 607 F. Supp. 2d at 1337-38. Given that the insurer anticipated that it would reach a decision within six months of receiving the claim, and it was not yet clear if the insurer would even deny the claim, the court found that ruling on the plaintiff's speculative breach of contract claim at that point would "inappropriately interfere" with the insurer's investigation. *Id.* at 1337-39. Unlike in *Moynihan*, Hanover has firmly asserted that it is not liable for the losses to ESA and Honeywell. The declaratory judgment action will not interfere with Hanover's investigation because, after six

months, that investigation reached an impasse.  Indeed, *Moynihan* itself recognizes that a declaratory judgment action may be appropriate when a claim cannot be resolved within the amount of time reasonably necessary to conduct an investigation.  *Id.* at 1339 (noting that the outcome might be different if the insurer had "refused to communicate with the Plaintiff for an unreasonable time and showed no diligence in conducting its investigation").

In *Forest Glade*, the insured party initiated a declaratory judgment action against its insurer three days before the insurer received notice of the insured's claim for coverage.  2009 WL 927750, at *1.  Given that the insurer had yet to investigate the claim or take a position on it, the court held that the insured's mere expectation that its insurer would ultimately deny its claim was insufficient to render the dispute ripe for adjudication.  *Id.* *4-5.  Here, however, Hanover has already received the claims and investigated them sufficiently to determine that it will take an adverse position.

Thus, under these facts, the Court concludes that this action satisfies the Article III requirement of an "actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment."  *Volvo Const. Equip. N. America, Inc.*, 386 F.3d at 592.

### C. Prudential Inquiry

Even when a court has subject matter jurisdiction over a declaratory judgment action, it retains broad discretion to decide whether or not to exercise that jurisdiction.  *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004).  Nevertheless, a court may decline to exercise jurisdiction over such actions only for "good reason."  *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)).  The court should exercise jurisdiction when declaratory relief "(1) will serve a useful

purpose in clarifying and settling the legal relations in issue; and (2) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (internal quotation marks omitted). The court also considers the federalism, efficiency, and comity concerns that attend a current or prospective parallel state proceeding, including whether the plaintiff is using the declaratory judgment action to forum shop. *Id.* at 423.

"It is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998). Because a decision in this case will resolve whether Hanover is liable for the losses incurred by ESA and Honeywell, this action will clarify the legal rights of the parties and terminate the controversy. A prompt resolution is desirable because, as Hanover alleges, so long as this dispute remains unsettled, it must hold excess cash in reserve. This economic injury highlights the immediacy of the dispute. "[D]eclaratory judgment relief was intended to avoid precisely the accrual of avoidable damages to one not certain of his rights." *Nautilus Ins. Co.*, 15 F.3d at 376 (internal quotation marks omitted).

Although ESA counters that it should not have to bear the cost of premature litigation, the alternative paths proposed by ESA reveal the flaw in its argument. ESA posits that Hanover, instead of advancing this litigation, should either complete its investigation of the claims and make a final coverage determination, or deny the claims based on the claimants' non-cooperation. For purposes of the motion, however, the Court must accept Hanover's allegation in its Complaint that it "has not received answers, documentation and reports to all of its inquiries, effectively halting Hanover's coverage analysis and precluding it from reaching a coverage determination." Compl. ¶ 33. The first option, therefore, is foreclosed by the ongoing

disputes over allegedly withheld information, while the second option would do nothing to further crystallize the controversy because Hanover has already taken the position in this suit that it is not liable under the policy. Requiring Hanover to formalize its position through additional procedural steps will not improve the parties' ability to litigate, or the Court's ability to adjudicate, this dispute. The fact that ESA's co-defendant, Honeywell, is ready to litigate this case now, and in fact has asserted counterclaims including one for declaratory relief, further supports retention of jurisdiction, as resolution of all claims together will promote efficiency. Thus, the Court will exercise its discretion to hear this action.

## II.     Motion to Dismiss for Failure to State a Claim

The Court also denies the Motion to the extent it seeks dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Here, the Complaint alleges sufficient facts to state a plausible claim for declaratory relief. It asserts that Hanover has no contractual obligation to indemnify ESA and Honeywell for their losses because one or more of the following are true: the policy's coverage ended before the date of loss, the damage to the IAC-9 and G-9, caused by water freezing in the IAC-9 coils, is not covered by the policy, or the damage resulted from defective workmanship. ESA's argument

essentially mirrors its argument on its Rule 12(b)(1) motion—that Hanover alleges only a hypothetical dispute because it cannot say exactly how the damage to the IAC-9 and G-9 occurred.  As discussed above, this criticism does not apply to Count II, in which Hanover specifically alleges that the IAC-9 was damaged by freezing water and that losses caused by freezing are not covered under the policy.  Moreover, Hanover is entitled to plead its theories upon information and belief when the missing information "is particularly within defendants' knowledge and control."  *Mann Bracken, LLP v. Executive Risk Indem., Inc.*, Civ. Action No. DKC 15-1406, 2015 WL 5721632, at *7 (D. Md. Sept. 28, 2015) (internal quotation marks omitted).  Here, Hanover lacks the evidence necessary to grant or deny the claims because ESA and Honeywell have refused to provide it.

ESA also argues for dismissal on the ground that Hanover has failed to fulfill its legal obligation to investigate the coverage claims in good faith.  Hanover does not dispute this duty, but asserts in its Complaint that it has gone as far as it can due to a lack of cooperation from ESA.  Although a breach of that duty may give rise to a cause of action for ESA, it does not require dismissal of Hanover's properly asserted cause of action for declaratory relief.  The Court therefore denies the motion to dismiss for failure to state a claim.

### III.    Motion to Strike

In its Reply, ESA asserts that if the Court dismissed Hanover's Complaint, it should also dismiss Honeywell's counterclaims "as a matter of judicial economy and discretion, not as a matter of ripeness."  ESA Reply at 6, ECF No. 30.  ESA notes that it would not escape the harms of premature litigation if Hanover's claims alone were dismissed because Honeywell's counterclaims raise nearly identical issues, so ESA would be an indispensable party to Honeywell's suit.  Honeywell's Motion to Strike argues that Hanover's request was improperly

raised in a reply brief and asks the Court to strike or disregard this argument, or to allow Honeywell to respond. Because the Court denies ESA's Motion to Dismiss, there is no basis to grant ESA's request that the Court dismiss Honeywell's counterclaims. Because the Court will not dismiss the counterclaims, Honeywell's Motion to Strike, including its request for leave to file a response to ESA's request, is denied as moot.

## CONCLUSION

For the foregoing reasons, ESA's Motion to Dismiss is DENIED. Honeywell's Motion to Strike is DENIED AS MOOT. A separate Order shall issue.


Date:  December 10, 2015                                    /s/
                                                THEODORE D. CHUANG
                                                United States District Judge