# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THE HANOVER INSURANCE COMPANY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:15-cv-00112-PX |
| | | Civil Action No. 8:16-cv-00050-GJH |
| ENGINEERED SYSTEMS ALLIANCE, LLC, *et al.*, | * | (consolidated) |
| | * | |
| Defendants. | | |
| | * | |

\*\*\*

## **MEMORANDUM OPINION**

Pending before the Court is Plaintiff The Hanover Insurance Company ("Hanover")'s motion for summary judgment and a related motion to seal. ECF Nos. 345, 387.[1] The motions are fully briefed by Hanover, Honeywell International, Inc. ("Honeywell"), and Engineered Systems Alliance, LLC ("ESA"), and a hearing was held on March 27, 2019. *See* Loc. R. 105.6. For the following reasons, the Court denies Hanover's motion for summary judgment and grants Honeywell's motion to seal.[2]

**I.     Background**

In 2010, the United States General Services Administration ("GSA") entered into a contract with Honeywell to design and build a central utility plant. ECF No. 1 ¶ 14. The central utility plant provides electricity, steam, and water to a federal facility in Maryland, in part

---

[1] Unless otherwise noted, citations to the docket refer to Case Number 8:15-cv-00112-PX. This Memorandum Opinion does not address the other pending motions. *See* ECF Nos. 413, 414, 417, 432, 435, 438, 442, 445, 452, 453; *see also* ECF Nos. 59, 61, 63, *Honeywell Int'l, Inc. v. Liberty Mut. Ins. Co.*, No. 8:16-cv-01430-PX.

[2] Honeywell seeks to seal information included in the Settlement Agreement between Hanover and Honeywell. ECF No. 387. In accordance with the Court Orders at ECF Nos. 371, 372, and 384, which all sealed or redacted information pertaining to this same Settlement Agreement, and in light of Honeywell's redacted memorandum at ECF No. 388, the Court grants Honeywell's motion.

through turbine generators. ECF No. 47 ¶ 6. The failure of the G-9 Turbine and related equipment form the basis of this action.

Honeywell hired ESA to provide "the design, construction, installation, and other services for the infrastructure" of the plant. *Id.* ¶ 8. As part of the Honeywell-ESA contract for this service, ESA was required to obtain insurance. ECF No. 183-1, art. 10. Specifically, the contract required that Honeywell be a named insured on the policy and that, in case of loss or damage, the insurance company provide payment to ESA and Honeywell "as their respective interests appear." *Id.* Fulfilling its contractual obligation, ESA purchased the Hanover Policy ("the Policy") central to this opinion.

The Policy includes both ESA and Honeywell as named insureds and references each as "you" or "your" throughout. ECF No. 1-1 at 2, 11, 25. The Policy covers "direct physical 'loss' to Covered Property." *Id.* at 11. The Policy defines "loss" as "accidental loss or damage" and "Covered Property" as "property that is owned by 'you' or is property of others in 'your' care, custody or control" to include "[m]aterials, supplies, fixtures, equipment" and other similar physical property. *Id.* at 11, 25. Covered Causes of Loss are "RISKS OF DIRECT PHYSICAL 'LOSS' to Covered Property except those causes of 'loss' listed in the Exclusions." *Id.* at 12. The Policy explicitly excludes from coverage "consequential loss of any kind," "except as otherwise provided." *Id.* at 20.

The Policy also permits Hanover to "[s]ettle the 'loss' with the owners of the property." *Id.* at 40. The Policy states that "[a] receipt for payment from the owners of that property will satisfy any claim of yours." The Policy also provides that if Hanover pays an insured under the Policy, and that insured has "rights to recover damages from another, those rights are transferred to [Hanover] to the extent of [its] payment." *Id.* at 24.

On May 12, 2014, the G-9 Turbine suffered severe damage. ECF No. 1 ¶ 28. When investigating the cause of damage, the parties also discovered damage to the turbine's inlet air cooling coils ("IAC-9 Coils"). *Id.* ¶ 26. Honeywell, as the owner of the G-9 Turbine, incurred the costs to refurbish the G-9 Turbine while ESA incurred the costs to replace the IAC-9 Coils. ECF No. 345 at 3–4. Honeywell contends that it suffered additional losses arising from damage to the G-9 Turbine which led to Honeywell's "failure to meet performance guarantees that have been made to GSA." ECF No. 141 ¶ 27. Based on the damage to the IAC-9 Coils and the G-9 Turbine, ESA filed a claim with Hanover seeking coverage under the Policy. ECF No. 1 ¶ 3.

On January 14, 2015, Hanover filed this action for declaratory relief regarding the scope of coverage under the Policy for the G-9 Turbine and IAC-9 Coils. ECF No. 1. Honeywell and ESA each filed counterclaims against Hanover, seeking declaratory judgments and alleging that Hanover breached the terms of the Policy by not paying on the claims for the covered losses. ECF Nos. 20, 47.[3] Honeywell and ESA also filed crossclaims against each other for breach of contract and indemnification. ECF Nos. 141, 183. Honeywell later amended its crossclaims to assert claims for additional defective work not at issue here. ECF No. 141.

In March of 2018, Hanover and Honeywell settled the claims related to the G-9 Turbine and memorialized the settlement terms in a Settlement Agreement. ECF No. 346. ESA was not party to the settlement, and nothing in the Settlement Agreement expressly extinguished ESA's liability to Honeywell on the crossclaims. However, the Settlement Agreement purported to "satisfy any claim of [ESA's]." *Id.* § F (brackets in original) (quoting the Policy). The Settlement Agreement also stated that Honeywell and Hanover "are settling and resolving, in its entirety, the portion of the Insurance Claim regarding the G-9 Turbine only." *Id.* § 2.A; *see also*

---

[3] Honeywell also alleged that Hanover breached the duty of good faith and fair dealing. ECF No. 20.

3

*id.* § 3.A. ("The Settlement Payment to Honeywell solely relates to damages caused by or resulting from direct physical loss to the G-9 Turbine and is not related to any damage to the IAC-9 Coils."). The settlement payment to Honeywell was less than Honeywell's estimated costs to refurbish the G-9 Turbine, and the parties agreed that payment represented "a good faith and fair compromise to avoid the costs and risks of further litigation between Hanover and Honeywell." *Id.* § 2.E. After the settlement was reached, Hanover and Honeywell dismissed the claims against each other. ECF No. 328.

Hanover also separately attempted to pay ESA for its property losses associated with the damaged IAC-9 Coils by mailing to ESA a check for $110,000. ECF No. 345-10. ESA returned Hanover's check. ECF No. 345-11. Hanover now seeks summary judgment in its favor, contending that it has satisfied fully its obligations under the Policy and that ESA's counterclaims are moot now that the claims for both the G-9 Turbine and IAC-9 Coils have been resolved.

**II. Standard of Review**

Summary judgment is appropriate when the court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted. *Celotex*, 477 U.S. at 322.

**III. Analysis**

**A. G-9 Turbine Claim**

Hanover contends that summary judgment must be granted in its favor as to all G-9 Turbine related claims because the Settlement payment constitutes full satisfaction for the G-9 Turbine covered losses. According to Hanover, ESA cannot as a matter of law now seek insurance coverage for any additional G-9 Turbine related losses for which it may ultimately be liable. For the following reasons, the Court disagrees.

**i. Choice of law**

As a preliminary matter, the Court must determine which state law applies to the operative contracts in this dispute. Federal courts sitting in diversity apply the conflict of laws rules of the forum state. *See Sokolowski v. Flanzer*, 769 F.2d 975, 977 (4th Cir. 1985). Under Maryland law, if the contract does not include a choice-of-law provision, the court applies "the law of the jurisdiction where the contract was made." *Cunningham v. Feinberg*, 441 Md. 310, 326 (2015). Here, both the Settlement Agreement and Honeywell-ESA contract each include an express choice-of-law provision applying Maryland law. ECF No. 346 § 11; ECF No. 183-1, art.

5

17. As no party challenges the choice-of-law provisions, the Court will apply Maryland law to questions involving the Settlement Agreement and the Honeywell-ESA contract.

The Hanover Insurance Policy, however, is governed by Virginia law. "[T]he substantive law of the place where the contract was made" for an insurance policy is typically where "'the policy is delivered and the premiums are paid.'" *Cooper v. Berkshire Life Ins. Co.*, 148 Md. App. 41, 55 (2002) (quoting *Aetna Cas. & Sur. Co. v. Souras*, 78 Md. App. 71, 77 (1989)). It is undisputed that the Policy was delivered to ESA in Virginia (ECF No. 1 ¶ 13), and the parties jointly rely on Virginia law throughout the pleadings. ECF No. 345 at 7; ECF No. 366 at 11. Thus, the Court will construe the Policy in accordance with Virginia law.

Under both Maryland and Virginia law, the meaning of a contractual provision is "ordinarily a question of law for the court." *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 250 (2001); *Seals v. Erie Ins. Exchange*, 277 Va. 558, 562 (2009). The court must give effect to the "plain meaning" of clear and unambiguous terms. *Palmer & Palmer Co., LLC v. Waterfront Marine Constr., Inc.*, 276 Va. 285, 290 (2008); *Weichert Co. of Md., Inc. v. Faust*, 419 Md. 306, 324 (2011). The plain meaning is determined by the "usual, ordinary, and popular meaning" of contractual terms. *Palmer*, 276 Va. at 290; *Bainbridge St. Elmo Bethesda Apartments, LLC v. White Flint Express Realty Grp. Ltd. P'ship, LLLP*, 454 Md. 475, 485 (2017) (quoting *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 301 (2004)) (internal quotation marks omitted). The court considers the "entire language of the agreement, not merely a portion thereof." *Bainbridge*, 454 Md. at 486 (quoting *Jones v. Hubbard*, 356 Md. 513, 534 (1999)) (internal quotation marks omitted); *Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 355 (Va. 2019). Under Virginia law, where conflicting interpretations of an insurance policy reveal two equally possible interpretations, the court typically construes the ambiguities against the

insurance company and in favor of coverage. *EPC MD 15*, 822 S.E.2d at 356.

### ii. G-9 Turbine Settlement under the Policy

The Settlement Agreement plainly states that the settling "Parties"—Hanover and Honeywell—are "resolving, in its entirety, the portion of the Insurance Claim regarding the G-9 Turbine only." ECF No. 346 § 2.A, § C (defining Insurance Claim as the claim ESA submitted to Hanover under the Policy). The Agreement further confirms that the settlement payment is for "damages caused by or resulting from direct physical loss to the G-9 Turbine." *Id.* § 3.A. Thus, says Hanover, the settlement fully extinguished all claims that could be made by ESA for covered G-9 losses. The Court must reject Hanover's argument.

The unambiguous language of the Agreement, read in its entirety, does not cover ESA or claims that ESA may make against the Policy if ESA is found liable for covered losses on Honeywell's crossclaims. ESA is not a party to the Settlement Agreement and so has not agreed that Hanover's payment to Honeywell has settled the claim "in its entirety." Additionally, Honeywell under the Agreement discharged *Hanover only* "from any and all claims, actions, causes of action . . . losses, and damages of whatever kind or nature" in exchange for the settlement payment." ECF No. 346 § 2.A. Honeywell did *not* relinquish its right to pursue against ESA the crossclaims, which may include covered losses under the Policy. In fact, the Settlement Agreement is a self-recognized "compromise" that did not accord full satisfaction for all possible covered losses. Because ESA may be found liable on the crossclaims for damages not already paid under the settlement, the Court cannot construe the Settlement Agreement to extinguish all covered losses as to ESA.

Hanover next contends that because it exercised its right to settle with the Honeywell, the owner of the G-9, all future claims that could be made by ESA have been extinguished under the

Policy. Hanover points to the Policy provision that reads "[i]n the event of 'loss' involving property of others in 'your' care, custody or control, [Hanover has] the right to . . .[s]ettle the 'loss' with the owners of the property," and "receipt for payment from the owners of that property will satisfy any claim of yours." ECF No. 1-1 at 40. Hanover's "right" to settle with the owner is best understood as an option to settle. *See E. Fla. Hauling, Inc. v. Lexington Ins. Co.*, 913 So.2d 673, 677 (Fla. Dist. Ct. App. 2005). Hanover may or may not invoke that option. If it chooses to do so, however, that choice does not extinguish its other independent contractual obligations to its insured; such obligations are "separate" under the Policy. *See Centennial Ins. Co. v. Transitall Servs., Inc.*, No. OO C 1383, 2001 WL 289879, at *3 (N.D. Ill. Mar. 15, 2001) (right to settle provision does not give insurer option to not pay for covered loss); *Aetna Cas. & Sur. Co. v. Price*, 206 Va. 749, 760–61 (1966) ("[A] relationship of confidence and trust is created between the insurer and the insured which imposes upon the insurer the duty to deal fairly with the insured in the handling and disposition of any claim covered by the policy."); *Nationwide Mut. Ins. Co. v. Pub. Serv. Co. of N.C., Inc.*, 112 N.C. App. 345, 350 (1993) ("Where a contract confers on one party a discretionary power affecting the rights of the other, this discretion must be exercised in a reasonable manner based upon good faith and fair play. Specifically, an insurer is required to act in good faith in exercising its right to settle a claim against the insured.") (quoting *Mezzanotte v. Freeland*, 20 N.C. App. 11, 17 (1973)) (internal quotation marks and citation omitted).

The "right to settle with owner" provision does not swallow whole Hanover's coverage obligations to ESA. Hanover and Honeywell agreed that the settlement payment fully satisfied *Honeywell*'s claims under the Policy, which is not the same as full satisfaction of all covered G-9 losses. ECF No. 346 at § 2.E, 2.C 5 ("Both Parties acknowledge each other's good faith actions

that have culminated in the *compromise* of claims in this Agreement," and "The Parties understand that the damages which have been claimed or which could have been claimed may be more extensive than presently known or contemplated . . . . ") (emphasis added). Accordingly, ESA may still be held liable for covered—and yet unpaid—losses. Thus, Hanover's contractual duty to ESA to cover such losses cannot be abrogated by Hanover's choice to settle with Honeywell.[4]

Hanover also contends that the Policy's subrogation provision effectively works to extinguish any further claim under the Policy for the G-9 Turbine. This provision entitled "Transfer of Rights of Recovery Against Others To 'Us'" states that, "If any person or organization to or for whom 'we' [Hanover] make payment under this insurance has rights to recover damages from another, those rights are transferred to 'us' *to the extent of 'our' payment*." ECF No. 1-1 at 24 (emphasis added) (hereinafter, the "subrogation provision"). Hanover argues that because it fully satisfied Honeywell's claim, it assumed Honeywell's full right to seek damages from another on the claim. Further, Hanover argues that because it cannot exercise subrogation rights against its insured ESA, ESA is insulated from any further G-9 liability that would be covered by the Policy.

The fatal flaw in Hanover's argument begins with a careful reading of the subrogation provision. The operative provision cabins subrogation to "the extent of 'our' payment," that is the payment Hanover made to Honeywell. *See, e.g. Ohio Cas. Ins. Co. v. State Farm Fire and Cas. Co.*, 262 Va. 238, 422 (2001) ("In a subrogation action, the rights of a subrogated insurer can rise no higher than the rights of its insured."); *Travelers Ins. Co. v. Riggs*, 671 F.2d 810, 813

---

[4] On this point, both Hanover's claims adjuster and ESA's insurance expert agree. ECF No. 366 at 29–32 (describing inability of insurance company to recover against insured, and industry custom for insurance company to obtain a release of insured's liability to owner of property when settling claims with owner).

9

(4th Cir. 1992) (recognizing partial subrogation to the extent of insurance payment). Hanover has provided the Court no authority to construe its subrogation rights differently here. The "to the extent of our payment" clause is particularly important because it limits the insurer's rights to seek recovery from another up to the payment that it made. Otherwise, an insurer could, arguably, pay less than full value on the insured's claim and then seek recovery from another which exceeds that payment, resulting in a windfall for the insurer. But this is also precisely why Hanover's contention does not withstand scrutiny. To read the subrogation provision as broadly as Hanover suggests would permit Hanover to pursue from another party (not its insured ESA) the total value of the covered losses even if such value exceeded its payment to Honeywell.

Additionally, the Court must read the subrogation provision in harmony with the Policy as a whole. *See EPC MD 15*, 822 S.E.2d at 356 ("[E]very word, clause, and provision of the policy 'should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties expressed therein.'") (quoting *Floyd v. N. Neck Ins.*, 245 Va. 153, 158 (1993)). To read the Policy as Hanover suggests would work a perverse result where the first-party insured who actually *purchased* the Policy—ESA—and who did not participate in the settlement on the G-9 Turbine, could be found liable for the entirety of the G-9 Turbine losses, including covered losses not yet paid by Hanover, and *not* be able to make a claim for such covered losses under the very Policy it had purchased. Such a reading would eliminate the protection promised by the Policy—that Hanover "will pay for direct physical 'loss' to Covered Property." *See* ECF No. 1-1 at 11. This the Court cannot allow.[5]

---

[5] At the hearing, Hanover vigorously contended that ESA is not entitled to coverage for an array of reasons apart from its settlement with Honeywell. For example, Hanover maintained that coverage should be denied

Clearly, Hanover recognizes, as it must, the contractual duty to protect its insured from loss, even if the loss is caused by the insured's negligence. *Walker v. Vanderpool*, 225 Va. 266, 271 (1983); ECF No. 376 at 5 ("As the holder of those rights Hanover does not intend, and is not permitted, to pursue recovery from ESA, its insured, for any damage to the G-9 Turbine."). This contractual duty is perhaps why the insurer cannot exercise its rights of subrogation against its own insured. *See, e.g.*, *Farmers Ins. Exch. v. Enterprise Leasing Co.*, 281 Va. 612, 629 (2011); *see also* 16 Couch on Ins. § 224:1 ("[I]t has long been held that no right of subrogation can arise in favor of an insurer against its own insured."). In the end, the Court cannot construe the Policy to deprive ESA of the very coverage it sought from Hanover in the first place. Summary judgment is therefore denied as to ESA on the G-9 Turbine.

**B.     IAC-9 Coils Insurance Claim**

Hanover next argues that ESA can pursue no further claim against it for the covered losses as to the IAC-9 Coils because Hanover has already tendered payment in full satisfaction of the claim. Hanover contends, without evidentiary support, that ESA spent $109,969.24 to repair and replace the IAC-9 Coils. ECF No. 345-1 at 3. Hanover further asserts that because it mailed ESA a check for $110,000 (ECF Nos. 345-10, 345-11), this offer to "pay ESA the replacement cost value of the coils, whatever that amount is, as demonstrated by competent evidence," has satisfied its obligations under the Policy to ESA, thus mooting ESA's breach of contract claim. *See* ECF No. 376 at 12.

"[A] case becomes moot when the issues presented are no longer live or the parties lack a

---

because the G-9 Turbine was not in ESA's care, custody or control and even if it were, the losses are subject to one or more Policy exclusions. Because Hanover sought summary judgment solely on the theory that its settlement with Honeywell extinguished claims under the Policy for G-9 covered losses as to ESA, none of these issues raised at the hearing are properly before the Court. Nor can the Court discern sufficient undisputed issues of material fact based on the record submitted that would support summary judgment in Hanover's favor on these alternative grounds. *See, e.g.*, ECF No. 367 at 105:18–22 (Honeywell corporate designee testifying that ESA had care, custody, and control of the G-9 Turbine on the date of loss).

legally cognizable interest in the outcome." *Bennett v. Office of Fed. Employee's Grp. Life Ins.*, 683 F. App'x 186, 188 (4th Cir. 2017) (quoting *Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013)) (internal quotation marks omitted). Generally, a rejected settlement offer does not moot an action. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016) ("When a plaintiff rejects such an offer—however good the terms—her interest in the lawsuit remains just what is was before.") (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 81 (2013) (Kagan, J., dissenting)) (internal quotation marks omitted). However, where unconditional tender of a party's entire loss renders the party unable to ask for any additional recovery upon a finding of liability, then the case may be rendered moot. *Price v. Berman's Auto, Inc.* No. 14-763-JMC, 2016 WL 1089417, at *3 (D. Md. Mar. 21, 2016); *see also Kuntze v. Josh Enterprises, Inc.*, No. 2:18CV38, 2019 WL 959598, at *6–7 (E.D. Va. Feb. 27, 2019).

No evidence supports that $110,000 constitutes full satisfaction for the IAC-9 Coil claim. If anything, the record evidence suggests the amount could be much more in that Honeywell released $185,000 from its retainer to ESA specifically for ESA to replace the IAC-9 Coils. ECF No. 365-5 at 2. Because the only record evidence regarding IAC-9 Coils demonstrates that the covered losses may exceed the offered amount, which was not actually paid, ESA's breach of contract claim has not been mooted, and Hanover is not entitled to a declaration that it has satisfied its insurance obligations for the IAC-9 Coils. Hanover's motion for summary judgment is denied as to the IAC-9 Coils.

### C. Trial and ESA's request to amend counterclaims

This leaves the question of ESA's coverage ready for resolution at trial. The coverage action will proceed first, and separately, from the pending crossclaims between Honeywell and ESA. Within **28 days** from the date of this Memorandum Opinion and Order, Hanover and

ESA—only—must submit, after meeting and conferring, a letter pleading not to exceed five pages discussing: (1) whether the coverage action shall be tried before a jury or the Court, and (2) the genuine issues of disputed, material facts that require resolution at a trial.

As to ESA's "request" to amend its counterclaims against Hanover, ESA contends that Hanover breached its contractual duties of good faith and fair dealing when it settled with Honeywell as to the G-9 Turbine without "securing protection" for ESA. ECF No. 366 at 33. The Court recognizes that the pleadings in this respect are less than a model of clarity, in part because ESA never formally moved to amend its counterclaims pursuant to Rule 15 of the Federal Rules of Civil Procedure. Accordingly, the Court will permit, by separate letter pleading not to exceed five pages exclusive of exhibits, ESA's motion for leave to amend its counterclaims against Hanover to be filed within **28 days** from the date of this Memorandum Opinion and Order. Hanover will be permitted to respond by letter pleading not to exceed five pages exclusive of exhibits, **14 days** thereafter.

**IV. Conclusion**

For the foregoing reasons, the Court denies Hanover's motion for summary judgment (ECF No. 345), denies without prejudices ESA's request for leave to amend its counterclaims (ECF No. 366 at 33), and grants Honeywell's motion to seal. ECF No. 387. A separate Order follows.


March 28, 2019/S/
DatePaula Xinis
United States District Judge